```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

TOKAY AUTO REMARKETING &
LEASING INC.,

      Plaintiff,

v.                                  Case No. 8:11-cv-2863-T-33MAP

GREAT LAKES REINSURANCE
(UK) PLC,

      Defendant.
_____/

## **ORDER**

This cause comes before the Court in consideration of Defendant Great Lakes Reinsurance (UK) PLC's Motion for Summary Judgment (Doc. # 39), filed on February 6, 2013. Plaintiff Tokay Auto Remarketing & Leasing Inc. filed a response in opposition to the motion on February 20, 2013. (Doc. # 40). After due consideration, and for the reasons that follow, Defendant's Motion for Summary Judgment is denied.

**I.   Background**

In the early morning hours of July 4, 2011, Tokay Auto's twenty-eight-foot Mastercraft pleasure boat was stolen from a grassy lot in Crystal River, Florida. (Watkins Dep. Doc. # 40-1 at 5, 8, 11). During the day

preceding the theft, Aaron Watkins, President of Tokay Auto, transported the boat on a trailer from Port Richey, Florida to Crystal River. (Id. at 14). Upon arriving in Crystal River, Watkins traveled to Crystal River Watersports and used that establishment's boat ramp to put his boat in the water. (Id. at 16; Brelsford Dep. Doc. # 40-4 at 11). After Watkins launched his boat, "somebody in the bait and tackle shop" at Crystal River Watersports directed Watkins to park his truck and trailer in "their overflow parking . . . just north of the Days Inn, [in] a dirt lot[.]" (Watkins Dep. Doc. # 40-1 at 17, 29). Crystal River Watersports did not charge a separate parking fee; parking was complimentary for guests who paid a "ramp fee." (Id. at 19). Guests who paid this ramp fee received a "ticket to put on the dash of [their] truck[s]." (Id.).

Around 4:00 p.m. on July 3, 2011, after a full day out on the water, Watkins loaded his boat back on the trailer and returned the truck, trailer, and boat to the grassy lot north of the Days Inn. (Id. at 20-21). Around 7:30 p.m., Watkins detached the truck from the trailer, secured the boat and trailer with a trailer lock, and "put blocks of wood in between the tires, so it wouldn't roll." (Id. at 21-22). Watkins observed that, at the time he detached the

2

truck from the trailer, approximately 25 or 30 other boats and trailers were parked in the same grassy lot. (Id. at 22). This lot was not enclosed by a fence, and there was no security gate at the entrance. (Id. at 23).

Watkins checked on his boat around 1:30 a.m. on July 4, 2011, confirming while en route to his room at the Days Inn that his boat remained in the grassy lot. (Id. at 28). As of 10:00 a.m., however, the boat was missing. (Id. at 31). Watkins immediately inspected the area where his boat and trailer had been, and "found tire tracks and there was no boat parked back in there. No one had taken the spot. And there [were the] blocks of wood still there for the tires." (Id.). Watkins notified the police of the theft, and the police prepared an incident report after inspecting the area where the boat and trailer had been parked. (Id. at 36-37). As of this date, the boat remains missing, and Watkins knows of no witnesses with information regarding the theft. (Id. at 37).

In January of 2011, Watkins had obtained a marine insurance policy issued by Great Lakes that provided coverage in the amount of $110,000.00 for theft of the boat. (Policy Schedule Doc. # 40-2 at 2). Specifically, the Insuring Agreement "provide[d] coverage for accidental

physical loss of or accidental physical damage to" the boat, subject to certain exclusions. (Insuring Agreement Doc. # 39-3 at 2). The relevant exclusion provides as follows:

> **Exclusions to Coverage A**
>
> Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:
>
> \*   \*   \*
>
> k)   Theft of the Scheduled Vessel and or its equipment whilst on a trailer unless the Scheduled Vessel is situate[d] in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

(Id. at 3-4).

On August 6, 2011, Great Lakes notified Watkins that his insurance policy "does not afford any coverage" for his claim. (Osprey Letter Doc. # 39-5). Great Lakes premised this determination on the above exclusion and provided the following explanation:

> Our investigations indicate that . . . your vessel was left parked on the north side of [the] Days Inn in an unmarked parking space on a dirt/grass parking lot. The policy conditions clearly stipulate that theft must be accompanied by actual force and violence of which there shall be visible marks made by tools, explosives,

4

>    electricity or chemicals. Clearly, in this
>    instance there was no such evidence of any
>    forcible removal of the vessel and the trailer.
>    It also appears from our investigations that your
>    vessel whilst being on a trailer at the time of
>    the incident was not secure in a locked and
>    fenced enclosure or a marina as per the policy
>    conditions set above. Accordingly, we can see no
>    basis upon which insurers should respond.

(Id.).

In response to this denial of coverage, Watkins initiated the instant breach-of-contract action on October 11, 2011, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. (Doc. # 1). A former Defendant, Osprey Special Risks Limited, removed the case to this Court on December 30, 2011. (Id.). With regard to Great Lakes' present Motion for Summary Judgment, the parties dispute (1) whether the boat and trailer were parked in a "marina" at the time of the theft, and (2) whether any evidence of forcible entry or removal made by "tools" existed at the site of the theft. (Doc. # 40 at 1-2; Doc. # 39 at 5-6).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not

5

enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590,

6

593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

### III. **Analysis**

Marine insurance policies are maritime contracts within federal admiralty jurisdiction. See Morrison Grain Co., Inc. v. Utica Mut. Ins. Co., 632 F.2d 424, 428 n.4

7

(5th Cir. 1980).[1] Nonetheless, absent established federal admiralty law on point, state law generally applies. See Kilpatrick Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 948 (11th Cir. 1986); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1955) ("In the field of maritime contracts . . . , the National Government has left much regulatory power in the States. . . . [T]his state regulatory power, exercised with federal consent or acquiescence, has always been particularly broad in relation to insurance companies and the contracts they make."). As explained by the Eleventh Circuit, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." All Underwriters v. Weisberg, 222 F.3d 1309, 1312 (11th Cir. 2000) (internal quotations omitted). Finding no firmly-entrenched federal law on the interpretation of exclusionary provisions, the Court looks to Florida law to resolve the instant dispute.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8

See Certain Underwriters at Lloyds, London v. Giroire, 27 F. Supp. 2d 1306, 1310 (S.D. Fla. 1998) (applying Florida law to a marine policy after finding no established federal law on the construction of exclusionary provisions).

As a preliminary matter, the Court notes that Tokay Auto characterizes the parties' dispute as to whether the boat was parked at a marina as "one of material fact." (Doc. # 40 at 10). However, although the question of whether Tokay Auto's trailer and boat were stolen from an unpaved parking lot is indeed a question of fact, whether the loss incurred comes within the scope of the relevant exclusionary clause is a question of law. See Fayad v. Clarendon Nat. Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005) (citing Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So. 2d 700, 701 (Fla. 1993) (analyzing whether an insurance policy exclusion precluded coverage as a question of law)).

"[I]nsurance contracts are construed in accordance with the plain language of the policy as bargained for by the parties." Fayad, 899 So. 2d at 1086 (internal quotations omitted). "However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage,

9

the policy is considered ambiguous. Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured." Id. (internal citations and quotations omitted). "Further, ambiguous exclusionary clauses are construed even more strictly against the insurer than coverage clauses." Id. "Thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy." Id.

As mentioned, ambiguous coverage provisions are construed liberally in favor of the insured. Id.; see also Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). In M.E. Charlesworth, Ltd. v. Perez, 426 So. 2d 1107 (Fla. 3d DCA 1983), Florida's Third District Court of Appeal applied this rule where "the sole disputed issue in the case was whether Perez, the insured whose boat was stolen, had complied with the requirement of the insurance policy that his boat be stored or kept at one of certain designated places, including a 'marina.'" Id. at 1107-08. The appellate court found that the trial court appropriately "gave the term 'marina' the broadest definition possible to provide coverage, and correctly determined that the term 'marina' may reasonably include,

as the proof showed, an apparently unfashionable, unfenced lot upon which there was a building and stored boats, and adjoining which there was a boat ramp, dock, moorings, and a houseboat where the manager of the facility (who collected . . . ramp-user charges from Perez and others) lived." Id. at 1108.

In reaching this conclusion, the Perez court referenced Section 159.02, Florida Statutes, which defines a marina as "any facilit[y] for the sale, repair, rental, storage, and servicing of boats," as well as Bunch v. Abel, 260 A.2d 19, 21 (Md. 1969), which defined a marina as "a dock or basin providing secure moorings for motorboats and yachts and often offering supply, repair, and other facilities."

In the instant case, Great Lakes contends that the exclusion applies because "the vessel while being stored on a trailer was not in a locked and fenced enclosure or marina." (Doc. # 39 at 11). Specifically, Great Lakes describes the lot where the trailer and boat were parked as "an open, unsecured grass lot north of the Days Inn." (Id. at 6). Additionally, Great Lakes argues that the denial of coverage for the theft is appropriate "on the basis that there was no visible evidence of forcible entry and/or

11

removal made by tools, explosives, electricity or chemical[s] as also required by the terms and conditions of the policy's theft exclusion." (Id.).

Tokay Auto agrees that, at the time of the theft, the boat was not in a locked, fenced enclosure, but maintains that the theft should be covered under the Insuring Agreement because the boat was parked in a marina. (Watkins Dep. Doc. # 39-1 at 44). In support of this contention, Tokay Auto argues (1) "that the marina's property extended to the overflow parking where the [boat] was stolen" and (2) "that the marina and Days Inn are so intertwined that the property where the [boat] was stolen from was a part of the marina." (Doc. # 40 at 6). Tokay Auto has submitted as evidence a map generated by the Citrus County Property Appraiser indicating that "the company that owns the Days Inn Crystal River also owns the real property where the Days Inn and Crystal River Watersports are located." (Property Map Doc. # 40-7; Doc. # 40 at 7).

Regarding Great Lakes' argument that there is no visible evidence of forcible entry or removal made by tools, Tokay Auto references the deposition of an insurance investigator, Milton Brelsford, who opined that the boat

12

was stolen by the use of "a vehicle of some sort with a trailer hitch or other towing device [that] simply backed up to the vessel and towed it away." (Brelsford Dep. Doc. # 40-4 at 6). Tokay Auto argues that this evidence, coupled with Watkins' testimony that he found tire tracks leading away from the area where his boat was stolen, indicates that the boat was "removed by a vehicle of some kind," and that a vehicle with such towing capabilities constitutes a "tool" within the meaning of the Insuring Agreement. (Doc. # 40 at 7; Watkins Dep. Doc. # 39-1 at 30).

The Court finds the potential for two different interpretations of the following argument by Great Lakes:

> [D]enial of coverage for theft of Plaintiff's vessel is also proper on the basis that there was no visible evidence of forcible entry and/or removal made by tools, explosives, electricity or chemical[s] as also required by the terms and conditions of the policy's theft exclusion.

(Doc. # 39 at 6). That is, the Court is unclear as to whether Great Lakes intends to argue that such evidence does not exist, or instead intends to argue that the existing evidence does not amount to evidence of "removal made by tools" within the meaning of the Insuring Agreement.

To the extent that Great Lakes argues there is no evidence of removal by a vehicle equipped for towing, Tokay Auto has presented sufficient contrary evidence to show that a genuine issue of material fact exists as to whether such "visible evidence of . . . removal made by tools" existed at the site of the theft. Additionally, to the extent that Great Lakes argues the testimonial evidence relating to removal by a vehicle does not constitute removal made by "tools" within the meaning of the Insuring Agreement, the Court finds that granting the Motion for Summary Judgment would be inappropriate because a vehicle equipped for towing might reasonably constitute such a tool for removal. In either event, granting summary judgment for Great Lakes would be improper.

**IV. Conclusion**

Great Lakes has offered only proof "which, at most, [shows] that . . . the place where [Watkins] stored his boat did not meet *their* definition of a marina." Perez, 426 So. 2d at 1108 (emphasis in original). The Court determines that the term "marina" might reasonably include the location where Watkins' trailer and boat were parked. Additionally, the Court finds that the exclusion's requirement of "removal made by tools" might reasonably

14

include the use of a vehicle with towing equipment. However, the Court declines to definitively resolve these questions of law until the parties have had an opportunity to introduce all relevant evidence at trial. For the reasons explained above, Great Lakes' Motion for Summary Judgment is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Summary Judgment (Doc. # 39) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of February, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record