UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOKAY AUTO REMARKETING &
LEASING INC.,

       Plaintiff,

v.                      Case No. 8:11-cv-2863-T-33MAP

GREAT LAKES REINSURANCE
(UK) PLC,

       Defendant.
_____/

**ORDER**

This cause comes before the Court in consideration of Defendant Great Lakes Reinsurance (UK) PLC's Motion for Reconsideration of Order Denying Defendant's Motion for Summary Judgment (Doc. # 42), filed on March 20, 2013. Plaintiff Tokay Auto Remarketing & Leasing Inc. filed a response in opposition to the Motion (Doc. # 43) on April 3, 2013. For the reasons that follow, the Motion is granted in part and denied in part.

I.  **Background**

In January of 2011, Aaron Watkins, President of Tokay Auto, obtained a marine insurance policy issued by Great Lakes that provided coverage in the amount of $110,000.00 for theft of his twenty-eight-foot Mastercraft pleasure

boat.  (Policy Schedule Doc. # 40-2 at 2).  Specifically,
the Insuring Agreement "provide[d] coverage for accidental
physical loss of or accidental physical damage to" the
boat, subject to certain exclusions.  (Insuring Agreement
Doc. # 39-3 at 2).  The relevant exclusion provides as
follows:

> **Exclusions to Coverage A**
>
> Unless specifically agreed by us in writing and
> additional premium charged the following losses
> and/or damages (whether incurred directly or
> indirectly) are not covered by this insuring
> agreement:
>
>         \*    \*    \*
>
> k)   Theft of the Scheduled Vessel and or its
> equipment whilst on a trailer unless the
> Scheduled Vessel is situate[d] in a locked
> and fenced enclosure or marina and there is
> visible evidence of forcible entry and or
> removal made by tools, explosives,
> electricity or chemicals.

(Id. at 3-4).

In the early morning hours of July 4, 2011, Tokay
Auto's insured boat was stolen from a grassy lot in Crystal
River, Florida.  (Watkins Dep. Doc. # 40-1 at 5, 8, 11).
During the day preceding the theft, Watkins transported the
boat on a trailer from Port Richey, Florida to Crystal
River.  (Id. at 14).  Upon arriving in Crystal River,
Watkins traveled to Crystal River Watersports and used that

establishment's boat ramp to put his boat in the water. (Id. at 16; Brelsford Dep. Doc. # 40-4 at 11).   After Watkins launched his boat, "somebody in the bait and tackle shop" at Crystal River Watersports directed Watkins to park his truck and trailer in "their overflow parking . . . just north of the Days Inn, [in] a dirt lot[.]"  (Watkins Dep. Doc. # 40-1 at 17, 29).  Crystal River Watersports did not charge a separate parking fee; parking was complimentary for guests who paid a "ramp fee."  (Id. at 19).  Guests who paid this ramp fee received a "ticket to put on the dash of [their] truck[s]."  (Id.).

Around 4:00 p.m. on July 3, 2011, after a full day out on the water, Watkins loaded his boat back on the trailer and returned the truck, trailer, and boat to the grassy lot north of the Days Inn.  (Id. at 20-21).  Around 7:30 p.m., Watkins detached the truck from the trailer, secured the boat and trailer with a trailer lock, and "put blocks of wood in between the tires, so it wouldn't roll."  (Id. at 21-22).  Watkins observed that, at the time he detached the truck from the trailer, approximately 25 or 30 other boats and trailers were parked in the same grassy lot.  (Id. at 22).  This lot was not enclosed by a fence, and there was no security gate at the entrance.  (Id. at 23).

3

Watkins checked on his boat around 1:30 a.m. on July 4, 2011, confirming while en route to his room at the Days Inn that his boat remained in the parking lot. (Id. at 28). As of 10:00 a.m., however, the boat was missing. (Id. at 31). Watkins immediately inspected the area where his boat and trailer had been, and "found tire tracks and there was no boat parked back in there. No one had taken the spot. And there [were the] blocks of wood still there for the tires." (Id.). Watkins notified the police of the theft, and the police prepared an incident report after inspecting the area where the boat and trailer had been parked. (Id. at 36-37). As of this date, the boat remains missing, and Watkins knows of no witnesses with information regarding the theft. (Id. at 37).

On August 6, 2011, Great Lakes notified Watkins that his insurance policy "does not afford any coverage" for his claim. (Osprey Letter Doc. # 39-5). Great Lakes premised this determination on the above exclusion and provided the following explanation:

> Our investigations indicate that . . . your vessel was left parked on the north side of [the] Days Inn in an unmarked parking space on a dirt/grass parking lot. The policy conditions clearly stipulate that theft must be accompanied by actual force and violence of which there shall be visible marks made by tools, explosives,

> electricity or chemicals.  Clearly, in this
> instance there was no such evidence of any
> forcible removal of the vessel and the trailer.
> It also appears from our investigations that your
> vessel whilst being on a trailer at the time of
> the incident was not secure in a locked and
> fenced enclosure or a marina as per the policy
> conditions set above.  Accordingly, we can see no
> basis upon which insurers should respond.

(Id.).

In response to this denial of coverage, Watkins initiated the instant breach-of-contract action on October 11, 2011, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida.  (Doc. # 1). A former Defendant, Osprey Special Risks Limited, removed the case to this Court on December 30, 2011.  (Id.).  In Great Lakes' Motion for Summary Judgment, filed on February 6, 2013, the insurer disputed that (1) the boat and trailer were parked in a "marina" at the time of the theft, and (2) evidence of forcible entry or "removal made by tools" existed at the site of the theft.  (Doc. # 39 at 5-6).

On February 26, 2013, this Court entered an Order denying Great Lakes' Motion for Summary Judgment.  (Doc. # 41).  Specifically, the Court determined that the term "marina" might reasonably include the location where Watkins' trailer and boat were parked, and that the exclusion's requirement of "removal made by tools" might

reasonably include the use of a vehicle with towing equipment. (Doc. # 41 at 14-15). However, the Court "decline[d] to definitively resolve [those] questions of law until the parties have had an opportunity to introduce all relevant evidence at trial." (Id. at 15). On March 20, 2013, Great Lakes filed the instant Motion for Reconsideration of the Court's Order denying the Motion for Summary Judgment (Doc. # 42), which is now ripe for the Court's review.

## II.  Legal Standard

It is within the Court's discretion to grant a motion for reconsideration. Lussier v. Dugger, 904 F.2d 661, 667 (11th Cir. 1990). Arguments in favor of granting reconsideration must be balanced against the desire to achieve finality in litigation. Id. As stated in Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc., 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), "[a] motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be

employed sparingly." <u>Lamar Adver. of Mobile, Inc. v. City of Lakeland</u>, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

This Court recognizes three grounds to justify reconsideration of a prior order under Federal Rule of Civil Procedure 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence, and (3) the need to correct clear error or manifest injustice." <u>Fla. College of Osteopathic Med., Inc.</u>, 12 F. Supp. 2d at 1308. In deciding a motion for reconsideration, "[t]his Court will not reconsider its judgment when the motion for reconsideration fails to raise new issues but, instead, relitigates that which the Court previously found lacking." <u>Ludwig v. Liberty Mut. Fire Ins. Co.</u>, No. 8:03-cv-2378-T-17MAP, 2005 U.S. Dist. LEXIS 37718, at *8 (M.D. Fla. Mar. 30, 2005). In addition, "a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the Court's reasoning." <u>Id.</u> at *11 (internal citation and quotation marks omitted).

## III. **Discussion**

Great Lakes contends that this Court erroneously applied Florida law in ruling on the Motion for Summary Judgment in this case, and now directs the Court's attention to the choice of law provision in the relevant

insurance contract which specifies that, in the absence of federal admiralty law on point, New York law should govern any contract disputes.[1]  Accordingly, finding no basis to disregard the policy's choice of New York law, <u>see</u> <u>Great Lakes Reinsurance (UK), PLC v. Rosin</u>, 757 F. Supp. 2d 1244, 1250-51 (S.D. Fla. 2010), the Court grants reconsideration to the extent that the Court recognizes that the substantive law of New York should govern this dispute. However, the Court's conclusion remains the same: Without any definitive guidance as to what might constitute a "marina" or "removal by tools" under the relevant exclusion, the Court finds that granting summary judgment for Great Lakes would be inappropriate.

A.   **Application of New York Law**

Marine insurance policies are maritime contracts within federal admiralty jurisdiction.  <u>See</u> <u>St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.</u>, 561 F.3d 1181, 1184 (11th Cir. 2009); <u>Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.</u>, 632 F.2d 424, 428 n.4 (5th Cir. 1980). Nonetheless, absent established federal admiralty law on point, state law generally applies.  <u>See</u> <u>Kilpatrick Marine</u>

---

[1] Great Lakes acknowledges that it "did not address the application of state law" in its Motion for Summary Judgment. (Doc. # 42 at 3).

Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 948 (11th Cir. 1986); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1955).  Finding no firmly-entrenched federal law on the interpretation of exclusionary provisions, the Court looks to New York law to resolve the instant dispute in accordance with the policy's choice of law provision.  See Certain Underwriters at Lloyds, London v. Giroire, 27 F. Supp. 2d 1306, 1310 (S.D. Fla. 1998) (applying state law to a marine policy after finding no established federal law on the construction of exclusionary provisions); accord Commercial Union Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 30 (2d Cir. 1999) ("There is no specific federal rule governing construction of maritime insurance contracts.").

Under New York law, "the starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous."  N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc., 499 F. Supp. 2d 361, 373 (S.D.N.Y. 2007) (quoting Flagship Marine, 190 F.3d at 32).  "A provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading."  Id. (quoting United Air Lines, Inc. v. Ins. Co. of State of Pa., 439 F.3d 128, 134 (2d Cir. 2006)).  "An

9

ambiguity exists where the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (quoting Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998)). "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." Id. (quoting Flagship Marine, 190 F.3d at 33).

"As a general rule, plain or unambiguous language will be given its ordinary meaning and effect and the need to resort to rules of construction arises only when an ambiguity exists." Id. "By contrast, if the court finds that the terms, or the inferences readily drawn from the terms, are ambiguous, then the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Id. (quoting Alexander & Alexander, 136 F.3d at 86). "The court must give effect to the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." Id. (internal

quotation omitted).  "All ambiguities in the contract are construed against the insurer and in favor of the insured." Id.  See also Pepper v. Allstate Ins. Co., 20 A.D.3d 633, 634 (N.Y. App. Div. 2005) ("[W]hen an insurance policy's meaning is not clear or is subject to different reasonable interpretations, ambiguities must be resolved in the insured's favor and against the insurer.").

As explained in the Court's Order on Great Lakes' Motion for Summary Judgment, the Court finds the "marina" and "removal made by tools" provisions to be ambiguous in this case.  Additionally, the Court finds no New York law requiring a more restrictive definition of the term "marina" than that applied in the Summary Judgment Order, and Great Lakes has provided no substantive law on this point whatsoever.  In its response to the Motion for Reconsideration, Tokay Auto offers the definition of a marina provided in N.Y. Nav. Law § 33-c(b). (Doc. # 43 at 5).  The Court finds this definition instructive, though not controlling in the context of this case.  That statute, entitled "Regulating disposal of sewage; littering of waterways," defines a "marina" as "any installation which provides any accommodations or facilities for watercraft, including mooring, docking, storing, leasing, sale, or

11

servicing of watercraft, located adjacent to waters of the state." This definition appears to accord with the statutory definitions of various other states. See, e.g., Fla. Stat. § 159.02 ("The term 'marinas' shall mean any facilities for the sale, repair, rental, storage, and servicing of boats."); La. Rev. Stat. Ann. § 9:4781 ("'Marina' means a marina, boatyard, or marine repair yard that provides, as part of its commercial operation, the storage of boats, boat motors, or boat trailers."); Minn. Stat. Ann. § 86A.20 (West) ("'Marina' means a mooring facility providing additional services to boats, such as repairs, haul-out, winter storage, food and beverage service, and services and facilities of a related nature.").

Additionally, although the Court applies New York substantive law to this dispute, the Court nonetheless finds persuasive the case of M.E. Charlesworth, Ltd. v. Perez, 426 So. 2d 1107 (Fla. 3d DCA 1983), which this Court previously referenced in ruling on Great Lakes' Motion for Summary Judgment. In Perez, "the sole disputed issue . . . was whether Perez, the insured whose boat was stolen, had complied with the requirement of the insurance policy that his boat be stored or kept at one of certain designated

places, including a 'marina.'"   Id. at 1107-08.   The appellate court found that the trial court appropriately "gave the broadest definition possible to provide coverage, and correctly determined that the term 'marina' may reasonably include, as the proof showed, an apparently unfashionable, unfenced lot upon which there was a building and stored boats, and adjoining which there was a boat ramp, dock, moorings, and a houseboat where the manager of the facility (who collected . . . ramp-user charges from Perez and others) lived." Id. at 1108.   Neither party has volunteered a case from any jurisdiction so analogous to the instant dispute, nor has the Court found one.[2]

Accordingly, regardless of whether the Court applies the substantive law of Florida or New York to this dispute, two integral questions in this case remain unresolved: What constitutes a "marina," and what is the meaning of "removal made by tools" under the relevant exclusion?  Because the Court finds that the term marina might include the location where Watkins' trailer and boat were parked, and because the Court finds that the exclusion's requirement of "removal made by tools" might reasonably include the use of

---

[2] Tokay Auto agrees that "the Perez case deals with the same question as we deal with here and no such New York case has been found on point."  (Doc. # 43 at 5).

13

a vehicle with towing equipment, the Court adheres to its previous conclusion that granting summary judgment for Great Lakes would be inappropriate.

### B.   Distinguishing *Morales*, *Vasquez*, and *Sirius*

In the Motion for Reconsideration, rather than providing substantive guidance as to what might constitute a "marina" or "removal made by tools" under New York law, Great Lakes instead rehashes the argument raised in its Motion for Summary Judgment that three particular cases "represent entrenched federal law on the interpretation of nearly-identical exclusionary provisions, finding them to be unambiguous." (Doc. # 42 at 2).  The Court disagrees, and distinguishes each of the three cases below.

The first of these cases cited by Great Lakes, Great Lakes Reinsurance (UK) PLC v. Morales, 760 F. Supp. 2d 1315 (S.D. Fla. 2010), indeed analyzes a nearly identical exclusionary provision.  However, that court was not faced with the determination of whether the insured's boat and trailer were situated in a marina at the time of the theft, nor did the court provide insight into the meaning of "removal made by tools."  In Morales, the defendant "operated the vessel, put the vessel on its trailer, parked the trailer in the driveway of his residence, and went to

14

work the next morning.  [The defendant's] residence ha[d] no fence and no gate." Morales, 760 F. Supp 2d at 1321 (internal citations omitted).  The defendant's wife later called to inform him that "the vessel was not parked in the driveway and had apparently been stolen while on its trailer where [the defendant] had left it." Id.

In Morales, the relevant policy of marine insurance contained an exclusion specifying, in relevant part:

> Unless specifically agreed by us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by this insuring agreement.
>
> * * *
>
> k)  Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist dry storage rack unless the scheduled vessel is situate[d] in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

Id.  The Morales court found that, because it was undisputed "that the theft of the insured vessel occurred while it was situated on a trailer located in the driveway of [the defendant's] home, which was unprotected by any locked or fenced enclosure," the above exclusion unambiguously excluded coverage for the theft of the vessel.  Id. at 1327.  Neither party attempted to argue

that the "marina" exception to the exclusion might apply, and therefore the Morales court needed not address the potential ambiguity inherent in that part of the exclusion. Likewise, as mentioned above, the Morales decision lacks any discussion of what might constitute "removal made by tools."

Great Lakes next cites to Great Lakes Reinsurance (UK) PLC v. Vasquez, 341 F. App'x 515 (11th Cir. 2009) for the principle that the relevant exclusion is unambiguous. In Vasquez, the insured's son "took the [insured boat] from its secure yard, placed it on a trailer and hitched it to his truck with the intention of transporting the boat to a launch site approximately 20 miles from where the boat was stored." Id. at 516. "En route to the launch site, [the insured's] son parked his truck -- with the [boat] on the trailer hitched to his truck -- in a parking lot while he picked up some supplies at Publix supermarket. The truck[,] with the attached trailer and the [boat,] was stolen from the Publix parking lot." Id.

The Eleventh Circuit found that the relevant theft exclusion in Vasquez, identical to the exclusion interpreted in Morales, excluded coverage for the theft of the boat. Id. at 517. Again, the court had no occasion to

16

interpret the "marina" portion of the exclusion. The Vasquez court merely found that "Exclusion (k) excludes from coverage unambiguously a vessel 'whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situate[d] in a locked and fenced enclosure.' Because the [boat] was on a trailer and was not situate[d] in a locked and fenced enclosure at the time of the theft, the policy plainly excludes this loss from coverage." Id. at 518. Thus, the Vasquez decision, like Morales, contains no discussion regarding the potential ambiguity inherent in the terms "marina" or "removal made by tools."

Finally, Great Lakes cites Sirius Insurance Co. (UK) Ltd., et al. v. Collins, 16 F.3d 34 (2d Cir. 1994), in its attempt to convince the Court that the relevant exclusion is unambiguous and applicable under the circumstances of this case. In Sirius, the defendant loaded his insured boat onto a trailer, parked his boat, trailer, and attached truck in the circular driveway of his parents' home, and "fastened a chain between two posts located at one outlet of the driveway before leaving; the other outlet remained open." Id. at 36. The next day, the truck, trailer, and boat were missing from the driveway. Id.

17

The "theft warranty" in the defendant's certificate of
insurance provided, in relevant part:

> It is hereby understood and agreed and warranted
> that;
>
> While the insured boat is stored on a trailer it
> shall be:
>
> 1. Kept in locked fences [sic] enclosure, garage,
> or building.
>
> 2. Secured with a trailer ball lock while
> attached to a vehicle.
>
> It is understood and agreed that this certificate
> does not cover loss or damage caused by theft of
> the insured boat(s) and/or equipment, while
> stored on the trailer unless occasioned by person
> or persons making:
>
> 1. Entry to the locked fenced enclosure, garage
> or building; or
>
> 2. Destruction of the ball lock.
>
> Provided the above is accompanied by actual force
> and violence of which there shall be visible
> marks made by tools, explosives, electricity, or
> chemicals.

Id. at 35.

The defendant in Sirius argued that the theft warranty
was ambiguous "because the lack of a conjunctive 'and' or
'or' left unclear whether he was required to comply with
one or both of the listed precautions against the theft of
a trailered boat, to wit: storage in a locked fenced
enclosure and securing with a trailer ball lock while

attached to a vehicle." <u>Id.</u> at 38.  The court disagreed, finding instead that the "structure naturally and unambiguously conveys that both precautionary conditions must be met." <u>Id.</u>

This Court finds <u>Sirius</u> inapposite.  Tokay Auto does not dispute that both requirements -- the first requirement being a "locked and fenced enclosure or marina" and the second being "removal made by tools" -- are necessary to establish coverage.  Rather, Tokay Auto contends that both requirements have been satisfied under the circumstances of this case.  Furthermore, <u>Sirius</u> provides no guidance regarding the interpretation of the "marina" or "removal made by tools" provisions in the relevant exclusion.

In the Motion for Reconsideration, Great Lakes argues that Tokay Auto's "attempt to argue that an open, unsecured, grass lot on the north side of the Days Inn Crystal River west of and across the street from the Crystal River Marina is itself a 'marina' constitutes a strained and unreasonable construction of the exclusionary provision." (Doc. # 42).  This Court does not consider it a strained interpretation of the relevant exclusion to conclude that the overflow parking lot of a marina -- presumably one of the only places where a boat would be

found on a trailer at a marina -- might be included in the term "marina" as it is used in the policy's exclusion governing "theft while on a trailer." Great Lakes additionally urges the Court to conclude that the relevant exclusion is unambiguous. (Id.). Again, the Court disagrees. The current dispute demonstrates the ambiguity convincingly; under Great Lakes' interpretation of a marina, theft from the grassy parking lot is not covered. Under Tokay Auto's interpretation, a marina's overflow parking lot would fall within the covered meaning of a "marina" given the context of where a trailered boat might be parked at such an establishment. However, the Court reserves its decision as to whether coverage extends to the theft in this case until the parties have had an opportunity to present all relevant evidence at trial.

## IV. <u>Conclusion</u>

In both Great Lakes' Motion for Summary Judgment and Tokay Auto's response, the parties overlooked two questions the Court finds integral to the resolution of this case: What constitutes a "marina," and what is the meaning of "removal made by tools"? After considering the premise of Great Lakes' Motion for Reconsideration, the Court finds that, even when New York substantive law is applied to

interpret the instant policy, the term "marina" might reasonably include the location where Watkins' trailer and boat were parked.  Additionally, the Court finds that the exclusion's requirement of "removal made by tools" might reasonably include the use of a vehicle with towing equipment.  However, the Court declines to resolve these issues at this juncture and finds it appropriate to wait until the parties have had the opportunity to present all relevant evidence at trial.  For the reasons explained above, Great Lakes' Motion for Reconsideration is granted to the extent that the Court applies the substantive law of the state of New York.  The Motion is otherwise denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Reconsideration of Order Denying Defendant's Motion for Summary Judgment (Doc. # 42) is **GRANTED in part** and **DENIED in part** as detailed herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of April, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record